IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11-CR-30009 |
| ) | |
| ANDRE L. JONES, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

      This matter comes before the Court for a Report and Recommendation on Defendant Andre L. Jones' Motion to Suppress Physical Evidence and Custodial Statement and Request for Evidentiary Hearing (d/e 12) (Motion). The Motion is fully briefed, and the District Judge has referred the matter for an evidentiary hearing and Report and Recommendation. This Court conducted the evidentiary hearing on April 4, 2011. Defendant Jones appeared personally and by his counsel Assistant Federal Public Defender Thomas G. Wilmouth. The Government appeared by Assistant United States Attorney Gregory K. Harris. After carefully considering all of the submissions of the parties and the evidence presented, and pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Motion be DENIED.

## I. BACKGROUND[1]

On January 3, 2011, at approximately 12:47 a.m., Springfield, Illinois, Police Officers Ryan Leach and Ricky Burns were on patrol in an unmarked car. Officer Leach was driving. Officers Leach and Burns were assigned to the Street Crimes Unit at the time. Both officers testified that Officer Leach was driving south on Livingston Street near Poplar Street when both officers observed a black small-sized Saturn SUV (SUV) parked on the east side of Livingston facing north. Both officers testified that the driver of the SUV pulled onto Livingston without signaling and started to drive north toward their unmarked car. Officer Leach drove south past the SUV as the SUV traveled north on Livingston. The officers ran the license plate on the SUV and determined that the SUV was registered to an address in Franklin, Illinois, a small town several miles southwest of Springfield. The Officers testified that Officer Leach drove around the block and came back to Livingston in order to follow the SUV.

The SUV drove three city blocks north on Livingston Street to the intersection of Livingston Street and Cook Street. The SUV turned left onto Cook Street. The officers both testified that the SUV then accelerated at a high rate of speed on Cook Street. The SUV drove approximately one block west to White City Blvd, and turned right abruptly onto White City

---

[1]This Report and Recommendation is prepared without the benefit of a transcript.

Blvd. Officer Leach testified that the SUV took the turn onto White City Blvd. at a high rate of speed. Officer Leach testified that the SUV made a wide turn and nose of the SUV dipped dangerously because the driver turned at such a high rate of speed. Officer Leach continued to follow the SUV.

The officers both testified that the SUV continued to accelerate at a high rate of speed while traveling north on White City Blvd. The SUV drove for one block on White City Blvd and then turned right and began traveling east on Jackson Street for a very short distance. The SUV turned left onto Paul Street and continued north on Paul Street. The officers' vehicle was directly behind the SUV by this time. The officers testified that the SUV drove at a normal rate of speed north for one block on Paul Street to the intersection with Monroe Street. There was a stop sign at the intersection of Monroe and Paul Streets for vehicles traveling north on Paul Street. Officer Leach's vehicle was about fifteen feet behind the SUV when it reached the intersection. Both officers testified that the driver of the SUV did not come to complete stop at the stop sign at Paul Street before turning left and heading west on Monroe Street.

Once the SUV turned left onto Monroe Street, Officer Leach turned on the emergency lights in the unmarked vehicle and effected a traffic stop of the SUV. Officer Leach stopped the SUV on Monroe Street just west of

the intersection of Monroe Street and Paul Street.  The officers testified that they stopped the SUV for committing three traffic violations: (1) failing to signal when the SUV pulled out from its parked position onto Livingston Street, in violation of 625 ILCS 5/11-804; (2) driving recklessly on Cook Street and White City Blvd., in violation of 625 ILCS 5/11-503; and (3) failing to stop at the stop sign at the corner of Paul Street and Monroe Street, in violation of 625 ILCS 5/11-305.  Throughout these events, the SUV and the officers' unmark car were the only two vehicles traveling on any of these streets.

    Byron Butler was the driver of the SUV.  The officers were familiar with Butler and knew that he was out on parole.  The passenger was the Defendant Andre Jones.  Butler told Officer Leach that he was scared and was trying to get away because he did not know who was following him.  The officers smelled the distinct odor of cannabis in the vehicle.  Officer Leach asked Butler if there was cannabis in the vehicle.  Butler told Officer Leach that they has smoked a blunt earlier. Officer Leach testified that the odor was not that of burnt cannabis, but cannabis leaves.  The officers directed both Butler and Jones to exit the SUV.  When Jones exited the SUV, Officer Burns saw a clear plastic bag on the floorboard in front of the passenger seat.  The bag appeared to contain cannabis.

Both Butler and Jones consented to be searched. Officer Leach found nothing on Butler. Officer Burns found a pistol holster on Jones' waistband and a clear plastic bag in Jones' shoe. The bag contained 26 smaller clear plastic baggies that each appeared to contain cannabis. Officer Leach then called the other two members of the Street Crime Unit to the scene, Officer Dodd and Sergeant Fricke. Sergeant Fricke, Officer Dodd, and Officer Leach then drove back along the route that the SUV took. The officers found a .38 Special handgun on a driveway on Jackson Street approximately twenty feet from the roadway. The officers returned to the location of the traffic stop on Monroe Street with the handgun. When the officers returned, they told the Defendant that they had recovered a handgun. Jones told the officers that the gun was his and that Butler did not know anything about the weapon. The officers read Jones his Miranda rights, and Jones waived his rights and agreed to talk to the officers. Jones stated that the weapon was a .38 Special before the officers told him the make of the weapon. Officer Leach testified that he gave Butler an oral warning for the traffic violations and let him go. The officers arrested Jones and took him into custody.

Officer Burns prepared a Field Booking and Probable Cause Statement (Statement) for Jones' arrest. Defendant's Exhibit 3. Officers Burns listed three offenses that Jones was being charged with: unlawful

use of a weapon by a felon, aggravated unlawful use of a weapon, and manufacture and delivery of 10 to 30 grams of cannabis. 720 ILCS 5/24-1, 5/24-1.6 and 550/5(c). Officer Burns then wrote a factual summary setting forth the factual basis on which the officers believed that they had probable cause to arrest Jones and charge him with these three felonies. Officer Burns described the event prior to the traffic stop as follows:

> On 01-03-11 while on patrol, we observed a black Saturn traveling N/B on Livingston towards Cook. The driver later ID as Byron Butler, committed a traffic violation at Livingston/Cook so we attempted to make a traffic stop on the vehicle. Just prior to initiating the stop, Byron was traveling at a high rate of speed N/B on WhiteCity. We observed the vehicle slow down at Whitecity/Jackson, then it continued E/B on Jackson. We stopped the vehicle at Monroe/Paul. . . .

Statement, at 1. Officer Burns signed and dated the Statement. The portion of the Statement labeled "Judicial" contains a judge's signature and a mark checking a box next to the phrase, "PC Founded". Id.

Butler also testified at the hearing. Butler agreed that the SUV was registered to an address in Franklin, Illinois. He testified that he had borrowed the vehicle. He also testified that he and Jones were close friends. They had met when they worked together in 1999 at McDonald's. Butler testified that he was giving Jones a ride from Jones' brother's house on Livingston to the residence of Jones' lady friend on Adams Street in Springfield.

Butler contradicted much of the officers' testimony about his driving. According to Butler, the SUV initially was stopped in a driveway on Livingston, not parked on the street. Butler testified that he backed out of the of the driveway onto Livingston and headed north; he did not pull away from a parked position on the curb. Butler agreed that he passed the officers' car heading south as he headed north. He testified that he identified the occupants of the car as law enforcement as they passed. He testified that the officers made a u-turn on Livingston rather than going around the block.

Butler testified that he did not commit any traffic violations from the time he started driving north on Livingston until the traffic stop on Monroe. He denied pulling away from the curb on Livingston Street because he backed out of a driveway; he denied speeding at any time during this trip; he denied accelerating at a high rate of speed; and he denied turning abruptly at White City Blvd. He also testified that the came to a complete stop at the intersection of Paul Street and Monroe Street. When asked why he took this apparently circuitous route, Butler testified that this was the fastest route to his destination.

The Defendant's investigator Phillip Geier also testified at the hearing. Geier prepared an aerial photograph of the area showing relevant portions of all of the streets, and also a map of the area. The photograph

and map were admitted into evidence. Geier also testified that he measured the distances traveled by the SUV on the six streets over which the SUV traveled in its journey. Geier testified that the SUV traveled three tenths of a mile on Livingston Street, one tenth of a mile on Cook Street, less than one-tenth of a mile on White City Blvd., and 100 feet on Jackson Street. He testified that the SUV traveled between six and seven-tenths of a mile on the entire trip from the starting near the intersection of Livingston Street and Poplar Street to the point on Monroe Street where the traffic stop occurred.

## II. ANALYSIS

Jones moves to suppress the marijuana and holster found on his person and his statements to the officers. Jones argues that the officers violated his Fourth Amendment rights by conducting an illegal traffic stop. Jones does not challenge the validity of any of the officers' actions after stopping the SUV. Jones argues that the evidence recovered from the SUV and his person, and his statements should be suppressed as the fruit of the illegal stop. See Wong Sun v. United States, 371 U.S. 471, 485-86 (1963).

The Fourth Amendment protects individuals from unreasonable searches and seizures. Officers who have probable cause to believe that a person has committed a traffic violation may reasonably conduct a traffic

stop. See United States v. Tinnie, 629 F.3d 749, 752 (7th Cir. 2011). If the officers have probable cause, then the stop is valid regardless of the officer's subjective motives or purposes. Whren v. United States, 517 U.S. 806, 812-13 (1996).

In this case, the issue is credibility; the officers testified that they had probable cause to stop the SUV because they observed Butler commit several traffic violations, but Butler testified that he did not commit any traffic violations. After carefully reviewing the evidence, the Court finds that the officers' version of the incident is credible and Butler's version is not. The Court listened carefully at the hearing and observed the demeanor of the witnesses. Officer Leach was particularly credible. Officer Burns could not remember as clearly as Officer Leach, but his testimony was consistent with Officer's Leach's testimony, and so, corroborated Officer Leach. Butler was not as credible. Butler testified that he was a long-time close friend of Jones. They had been friends for over ten years. Butler has at least one felony conviction which affects his credibility. The Court finds that Butler demonstrated a clear bias in his testimony to help his friend.

More significantly, Butler's circuitous route was also consistent with the officer's testimony that Butler was driving erratically and that Butler was trying to evade the car that was following it. In the span of less than seven tenths of a mile, Butler traveled in four different directions on six different

streets and made five separate turns. He traveled north on Livingston, turned left, traveled west on Cook Street, turned right, traveled north on White City Blvd., turned right, traveled east on Jackson Street, turned left, traveled north on Paul Street, turned left, and traveled west on Monroe Street. The constant turning was consistent with the officers' testimony that Butler was driving erratically and that Butler stated that he was trying to get away from the car that was following him.

Butler's explanation of his circuitous route was not credible. Butler testified that he was traveling from Livingston and Poplar to a location on Adams Street. The aerial photograph shows that Livingston runs generally north and south and Adams runs east and west. Adams Street, however, ends to the west of Livingston and the two streets do not intersect. Monroe Street also runs east and west one or two blocks south of Adams Street. Butler testified that he was traveling north to Monroe Street in order to head west on Monroe Street until he reached a north-south street that would intersect Adams. Butler testified that he took the fastest route.

Butler's testimony that he took the fastest route is not credible. The aerial photograph and the map both show that Livingston Street runs north and south and crosses both Cook Street and Monroe Street. Thus, when Butler started north on Livingston Street from his original location, he could have simply continued north on Livingston past Cook Street instead of

turning.  He could have driven two more blocks north on Livingston to Monroe Street and then headed west on Monroe.  It is not credible that making all these turns is faster that simply driving straight for two blocks.  His explanation is not credible.  Butler's actions were much more consistent with someone who was trying to get away from the vehicle following him.  The Court finds that Butler was not credible and the officers were credible.  The Court finds that the officers had probable cause at the time of the stop to believe that Butler committed the three traffic violations.  The stop was valid.

     Jones argues that the officers did not have probable cause to stop Butler for reckless driving because Bulter's driving did not endanger life or property because the streets were deserted except for the SUV and Officer Leach's vehicle.  The reckless driving statutes states, in relevant part, "(a)  A person commits reckless driving if he or she: (1) drives any vehicle with a willful or wanton disregard for the safety of persons or property; . . . ."  625 ILCS 5/11-503(a)(1).  In this case, Butler demonstrated wanton disregard for the life of his passenger, Jones, by driving erratically and making a dangerous turn at the corner of Cook Street and White City Blvd.  Butler also demonstrated wanton disregard for the property of the homeowners who reside on Cook Street and White City Blvd.  because he

risked losing control of the SUV and damaging their yards and houses. The officers had probable cause to stop Butler for reckless driving.

Jones also argues that the officers' testimony is not credible because Jones argues that the Statement makes no mention of the three traffic violations which the officers testified formed the basis for the traffic stop. The Statement, as quoted above, refers to a traffic violation at "Livingston/Cook." Jones argues that neither officers observed the SUV commit a traffic violation at the corner of Livingston Street and Cook Street. The Court disagrees with Jones' interpretation of the Statement. The Statement does not contradict the officers' testimony. It is important to recognize the purpose of the Statement. The Statement is not a police report. The Statement was presented to a judge for determination of probable cause for Jones' arrest on the felony weapons and drug charges. The focus of the Statement is the felony charges, not the traffic stop. The traffic stop is only background information. The fact that the traffic violations are referred to in a summary fashion is therefore not surprising.

Furthermore, the reference to "Livingston/Cook" is consistent with the officers' testimony that the erratic driving started at that intersection. The officers testified that the SUV accelerated at a high rate of speed on Cook Street immediately after turning at that intersection. The Statement goes on to state that, "Byron was traveling at a high rate of speed N/B on

WhiteCity." This is again consistent with the officers' testimony that Butler's erratic driving continued as the SUV left the intersection of Livingston Street and Cook Street, sped down Cook Street, turned abruptly onto White City Blvd., and continued accelerating at a high rate of speed. The fact that the Statement did not contain all of the details of the traffic violations is, again, not surprising. The purpose of the Statement is to set forth the probable cause for the felonies charged, not the traffic stop. The Statement does not contradict the officers' testimony.

WHEREFORE this Court recommends that Defendant Andre L. Jones' Motion to Suppress Physical Evidence and Custodial Statement and Request for Evidentiary Hearing (d/e 12) be DENIED. The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after being served with ECF copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); Local Rule 72.2.

ENTER: April 14, 2011

                     *s/ Byron G. Cudmore*
                     BYRON G. CUDMORE
                     UNITED STATES MAGISTRATE JUDGE